**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CORUS AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 1422 |
| | ) | |
| INTERNATIONAL SAFETY ACCESS | ) | |
| CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Before the court is the defendant's motion to dismiss the plaintiff's complaint or stay these proceedings. For the reasons explained below we grant defendant's motion in part and dismiss this case.

**BACKGROUND**

Plaintiff Corus America, Inc. ("Corus") has filed a one-count complaint against defendant International Safety Access Corp. ("ISAC") alleging breach of contract based upon three unpaid invoices.[1] Corus provides various services related to the sale and distribution of steel products, (Compl. ¶ 1); ISAC distributes steel fencing for use in commercial construction. (Plant Aff., attached as Ex. A to Def.'s Mem. in Support of its Mot to Dismiss

---

[1] We have subject-matter jurisdiction under 28 U.S.C. § 1332. Corus is a New York corporation with an office in Schaumburg, Illinois; ISAC is a South Carolina corporation based in Clover, South Carolina. (Compl. ¶¶ 1-2.) The total amount of the unpaid invoices is $573,150.60. (Id. at ¶ 10.)

(hereinafter "Def.'s Mem."), ¶ 2.)  The dispute which gives rise to this lawsuit involves representations allegedly made by Integrity World Wide, Inc. ("IWW") and its principal John Melic, neither of whom are parties in this case.  According to ISAC, Melic repeatedly and falsely told ISAC that he owned enforceable patents to certain of IWW's products.  Based on these assurances, ISAC agreed to distribute IWW's products in the United States.[2]  Pursuant to ISAC's arrangement with IWW, ISAC placed its orders with a third company, India-based TATA, Inc., which manufactured the goods for IWW.  (Id. at ¶ 4.)  TATA delivered the goods directly to ISAC, and ISAC sent payments directly to TATA at its United States headquarters in New York.  (Id. at ¶¶ 4, 8.)

ISAC, IWW and TATA conducted business in this manner for approximately two years before ISAC "was informed" in the fall of 2008 that TATA "had either purchased, merged with, or established a separate entity named 'Corus America, Inc.' to service [TATA's] steel production orders in the United States."  (Schwartz Aff. ¶ 9.)  According to Jagdish Mehta, a product manager at Corus and the company's primary contact with ISAC, Corus has "represent[ed]" TATA since April 2008.  (Mehta Decl. ¶¶ 1, 4.)  After Corus became involved ISAC was "directed" to send purchase orders and payments to Corus (not TATA) at Corus's Illinois address.  (Schwartz Aff. ¶

---

[2] Melic's alleged representations are the subject of a suit that ISAC has filed against Melic and IWW in a South Carolina state court.  (See S.C. Compl., attached as Ex. D to Def.'s Mem.)

9; <u>see also</u> Purchase Order Nos. 80014, 80015, 80018, attached as Ex. B to Compl.)  Between April and August 2008 ISAC sent Corus "numerous purchase orders [] for steel goods totaling $4,761,696." (Mehta Decl. ¶ 7.)  According to Corus, it responded to the purchase orders by sending ISAC order acknowledgments by mail and email. (<u>Id.</u> at ¶ 8.)  Each order acknowledgment contains reverse-side terms and conditions ("General Terms and Conditions of Sale"), including a forum selection clause requiring the parties to litigate in Illinois any dispute regarding the ordered products. (<u>Id.</u>; <u>see also</u> Order Acknowledgments attached as Ex. A to Compl.)[3] ISAC made several payments to Corus at its Illinois address, apparently before the current dispute arose. (<u>Id.</u> at ¶ 9.)  During this period of time ISAC and Corus communicated regularly via phone, fax, and email. (Mehta Decl. ¶ 6.)  Also, in June 2008 ISAC representatives — including the company's CEO, Roger Schwartz — visited Corus's headquarters in Schaumburg, Illinois "to discuss current and future business." (<u>Id.</u> at ¶ 5.)

## DISCUSSION

## A.   Personal Jurisdiction Based on the Defendant's Contacts with Illinois

---

[3]   We asked Corus to submit additional evidence substantiating its allegation that it sent the disputed order acknowledgments to ISAC.  In response, Corus has produced an email from Mr. Mehta to two ISAC executives attaching the acknowledgments for two of the disputed purchase-orders, including the reverse-side terms and conditions. (<u>See</u> Mehta Supp. Decl. at Ex. D.)

"A federal district court sitting in diversity in Illinois has jurisdiction over a non-consenting, non-resident defendant if an Illinois state court would have jurisdiction." Juristech Assoc., Ltd. v. Krieg Devault Alexander & Capehart, LLP, No. 02 C 620, 2002 WL 1343746, *1 (N.D. Ill. June 18, 2002). Corus "has the burden of demonstrating the existence of personal jurisdiction." RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997). "Three distinct obstacles to personal jurisdiction must generally be examined: 1) state statutory law, 2) state constitutional law, and 3) federal constitutional law." Id. Because Illinois' long-arm statute "authorizes personal jurisdiction to the constitutional limits, the three inquiries mentioned above collapse into two constitutional inquiries — one state and one federal." Id.; see also Juristech, 2002 WL 1343746, *1 (N.D. Ill. June 18, 2002) (It is unnecessary to "consider whether the defendants engaged in any of the acts enumerated in the Illinois long-arm statute."). Because "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," Hyatt Intern. Corp. v. Coco, 302 F.3d 707, 715 (7th Cir. 2002), a single due-process analysis will suffice. See, e.g., Dupree v. Greyhound Lines, Inc., 540 F.Supp.2d 946, 950 (N.D. Ill. 2008).

A defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice."
International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)
(citation and internal quotation marks omitted).  There are two
types of jurisdiction, general and specific.  "So-called general
jurisdiction is proper only when the defendant has 'continuous and
systematic' contacts with the state in question; if such contacts
exist, the court may exercise personal jurisdiction over the
defendant even in cases that do not arise out of and are not
related to the defendant's forum contacts."  Hyatt, 302 F.3d at
713.  "Specific jurisdiction refers to jurisdiction over a
defendant in a suit 'arising out of or related to the defendant's
contacts with the forum.'"  RAR, 107 F.3d at 1277 (quoting
Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,
414 n.8.)).  Corus contends that ISAC's contacts with Illinois are
sufficient to warrant both types of jurisdiction.

    1.  *General Jurisdiction*

    Corus, which devotes only one footnote to its argument that
ISAC is subject to general jurisdiction in this forum, relies on
statements that ISAC's CEO purportedly made to Mr. Mehta concerning
the company's contacts with Illinois.  (See Mehta Aff. ¶ 5
(testifying that Schwartz told him that he (Schwartz) "often
traveled to Chicago for business and that ISAC was doing business
with the Chicago, Illinois office of Bovis Lend Lease.").)  ISAC
admits to having a business relationship with an Australia-based

company with an office in Illinois (Bovis Lend Lease), and that
ISAC representatives attended a convention held by that company in
Chicago.  (Schwartz Reply Aff. ¶ 3.)  But ISAC contends that its
relationship with Bovis "is not exclusive to or based in the State
of Illinois," and claims that "any travels to the State of Illinois
were random and attenuated."  (Id.)  It is undisputed that ISAC
does not maintain an office, own property, or retain any employees
in Illinois, and is not registered to do business in the state.
(Schwartz Aff. ¶ 18.)  We conclude that Corus has not met its
burden to show that ISAC's contacts with Illinois are "continuous
and systematic."

   2.  *Specific Jurisdiction*

   The existence of a contract between an out-of-state defendant
and an Illinois plaintiff is insufficient, by itself, to justify
personal jurisdiction.  See RAR, 107 F.3d at 1277 (citing Burger
King, 471 U.S. at 478); see also Federated Rural Elect. Ins. Corp.
v. Inland Power and Light Co., 18 F.3d 389, 395 (7th Cir. 1994).
Courts look to other factors "including who initiated the
transaction, where the negotiations were conducted, where the
parties executed the contract, and where the defendant would have
performed the contract."  MAC Funding Corp. v. Northeast
Impressions, Inc., 215 F.Supp.2d 978, 981 (N.D. Ill. 2002).  Corus
argues that ISAC "initiated" the transactions because it sent
purchase orders to Corus.  (Pl.'s Mem. at 13-14.)  But this fails

to take into account the larger context of the transaction.  ISAC
sent purchase orders to Corus in Illinois because, after
approximately two years of dealing with TATA directly, TATA
directed ISAC to submit purchase orders to Corus.  ISAC had no say
in TATA's decision to acquire or affiliate itself with Corus.  It
is true that ISAC continued to do business with TATA/Corus after
the transition, but it is unclear whether ISAC's arrangement with
IWW left the company with realistic alternatives.  At the very
least, ISAC's situation is distinguishable from the typical
scenario in which a defendant-buyer seeks out a business
relationship with a seller in the forum state.

　　ISAC contends that the parties "discussed or negotiated the
price, quantity, and expected shipment dates," but there is no
evidence that these discussions or negotiations took place in
Illinois.[4]  Cf. Marine Retailers Assoc. of America v. Southern
Exposition Management Co., No. 96 C 2502, 1996 WL 507279, *3 (N.D.
Ill. Sept. 4, 1996) (finding personal jurisdiction where, among
other contacts, "[n]egotiations leading up to the signing of the
contract occurred in Chicago.").  Both parties are vague concerning
the substance of their one face-to-face meeting in Illinois, but
there is no indication that any substantive negotiations took place
on that occasion.  Significantly, there is no evidence that Corus'

---

[4]  The location where the contract was executed is not a relevant factor
in this case because a contract was formed, if at all, through the exchange of
the parties' forms or else through their conduct.  (See infra.)

cause of action arose out of ISAC's only visit to Illinois. <u>Cf.</u>
<u>id.</u> at *3 ("[E]ven one visit to the state is sufficient to
establish the minimum contacts necessary to support personal
jurisdiction, if the cause of action arose out of the defendant['s]
conduct on that visit."). Finally, the contract was largely
performed outside of Illinois: the purchased goods were
manufactured overseas and delivered directly to IWW in South
Carolina, where ISAC is currently storing them. ISAC has
apparently mailed some payments to Corus in Illinois in connection
with other purchase orders, but we do not attach much significance
to that fact. <u>See</u> <u>Federated Rural Elec.</u>, 18 F.3d at 395 ("Several
courts have held that making telephone calls and mailing payments
into the forum state are insufficient bases for jurisdiction.").

On the other hand, it appears that the parties conducted a
significant amount of business over the course of their relatively
short relationship. <u>See</u> <u>Heritage House Restaurants, Inc. v.</u>
<u>Continental Funding Group, Inc.</u>, 906 F.2d 276, 281 (7th Cir. 1990)
(A plaintiff's "ongoing business relationship" with an out-of-state
defendant may support personal jurisdiction.); <u>see also</u> <u>Marine</u>
<u>Retailers</u>, 1996 WL 507279, *2. Corus points out that ISAC
submitted "numerous" purchase orders for goods totaling
approximately $4.7 million, and that the parties communicated
regularly by telephone, email and fax. "[I]n a breach of contract
case, it is only the 'dealings between the parties in regard to the
disputed contract' that are relevant to minimum contacts analysis."

RAR, 107 F.3d at 1278 (quoting <u>Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods.</u>, 75 F.3d 147, 153 (3d Cir. 1996)). We acknowledge that it may be difficult to tie particular communications to a particular contract in an ongoing commercial relationship, <u>id.</u> at 1278, but Corus has not even attempted to make that showing. (Mehta Decl. ¶ 6 (referring generally to telephone, email and fax communications).) And there is no indication that the parties' other contracts "were part of an interrelated package dedicated to one overarching goal." <u>Id.</u> at 1279 (citing <u>Burger King</u>, 471 U.S. at 478-82). Rather, they seem to have been a series of discrete transactions. We do not think that it is appropriate, under the facts of this case, to aggregate all of the defendant's discrete transactions for jurisdictional purposes. Given the limited extent of ISAC's relevant contacts with Illinois, we conclude that a lawsuit in Illinois was not reasonably foreseeable. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

## B.  **Express Consent to Personal Jurisdiction**

In the alternative, Corus contends that ISAC has consented to personal jurisdiction in this District by accepting Corus's "General Terms and Conditions of Sale," which include (in very fine print) a forum selection clause. <u>See</u> <u>Heller Financial, Inc. v. Midwhey Powder Co., Inc.</u>, 883 F.2d 1286, 1290 (7th Cir. 1989) (A party may explicitly or implicitly consent to personal jurisdiction.). ISAC cites federal and state law in support of its argument that the forum-selection clause is invalid. <u>Cf.</u> <u>IFC</u>

_Credit Corp. v. United Business & Indus. Federal Credit Union_, 512
F.3d 989, 991 (7th Cir. 2008) ("[T]he validity of a forum-selection
clause depends on the law of the jurisdiction whose rules will
govern the rest of the dispute.") (citing _Abbott Laboratories v.
Takeda Pharmaceutical Co._, 476 F.3d 421 (7th Cir.2007)).  ISAC's
argument fares better under Illinois law than federal law, _see_ _IFC
Credit Corp. v. Aliano Bros. General Contractors, Inc._, 437 F.3d
606, 609-10 (7th Cir. 2006), but not much better.  Illinois courts
have enforced forum-selection clauses against business entities,
even where there is no evidence that the parties negotiated the
clause.  _See, e.g._, _Compass Environmental, Inc. v. Polu Kai
Services, L.L.C._, 882 N.E.2d 1149, 1156-57 (Ill. App. 2008)
(upholding a forum-selection clause in a transaction between two
business entities even though it was not negotiated).  The more
pertinent question, we think, is whether the forum-selection clause
is in fact part of the parties' alleged contracts.

Under the Code, "[a] definite and seasonable expression of
acceptance or a written confirmation which is sent within a
reasonable time operates as an acceptance even though it states
terms additional to or different from those offered or agreed upon,
_unless acceptance is expressly made conditional assent to the
additional or different terms_."  _See_ 810 ILCS 5/2-207(1) (emphasis
added).  Corus's Order Acknowledgment states that acceptance of the
purchaser's order "is expressly conditioned upon your assent to our
general terms and conditions of sale which are set forth below and

on the reverse side hereof." (Order Acknowledgments, attached at Ex. A to Compl.)[5]  There is no evidence that Corus expressly assented to the additional terms, including the forum-selection clause.  See C. Itoh & Co. (America) Inc. v. Jordan Intern. Co., 552 F.2d 1228, 1235-36 (7th Cir. 1977); see also Diamond Fruit Growers, Inc. v. Krack Corp., 794 F.2d 1440, 1445 (9th Cir. 1986) (holding that additional or different terms do not become part of the contract unless the offeror specifically and unequivocally assents to them).[6]  "If, without the offeror's acceptance of the offeree's terms, the parties nevertheless act as if a contract has been formed, the terms of their agreement are determined by § 2-207(3) of the U.C.C."  Dresser Industries, Inc., Waukesha Engine Div. v. Gradall Co., 965 F.2d 1442, 1449 (7th Cir. 1992); see also 810 ILCS 5/2-207(3) (The parties' conduct may "establish a contract for sale although the writings of the parties do not otherwise establish a contract.").[7]  The terms of such a contract "consist of

---

[5]/  The price quotation attached to Mr. Mehta's supplemental declaration contains the same language.

[6]/  The order acknowledgment states that "[y]our acceptance of the goods specified herein shall operate as your assent to our general terms and conditions of sale."  This is an end-run around § 2-207, and we are not aware of any Illinois authorities that support enforcing this provision to create a contract on Corus's terms.  For the reasons stated in Diamond Fruit Growers, it is inconsistent with § 2-207 to reward the party who submits the last form.  See Diamond Fruit Growers, 794 F.2d at 1445 (If a party's conduct constituted assent to additional or different terms under § 2-207(1), "the result would turn on which party sent the last form, and would therefore be inconsistent with section 2-207's purpose of doing away with the last shot rule.").  Moreover, Corus does not address ISAC's contention that it did not "accept" the goods and therefore no contract was formed even under the terms of Corus's form.  (See Reply at 5.)

[7]/  Corus relies 2-207(2), (Sur-response at 3-5), but that subsection applies only if a contract is formed under 2-207(1).  See C. Itoh, 552 F.2d at 1236.  No such contract was formed here for the reasons we just discussed.

those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act." 810 ILCS 5/2-207(3); <u>see also</u> <u>Dresser</u>, 965 F.2d at 1451-52; <u>C. Itoh</u>, 522 F.2d at 1238.  Even assuming that the parties' conduct was sufficient to establish a contract, the terms of that contract would not include the forum-selection clause, which is not included in ISAC's purchase order and is not supplied by the UCC's other provisions.  In short, we are not persuaded that the parties' contract, if one was formed, included the forum-selection clause.[8]

## CONCLUSION

Defendant's motion to dismiss (11) is granted and this case is dismissed for lack of personal jurisdiction.


DATE:     December 22, 2009


ENTER:    _____

          John F. Grady, United States District Judge

---

[8]  Because we conclude that we lack personal jurisdiction over ISAC, we deny as moot its alternative requests that we dismiss the complaint for forum non conveniens or else stay these proceedings pending the outcome of the South Carolina action.